Thank you, Chief Judicial Officer. Good morning, Your Honors. I'm Bill Warren, representing the Department of the Sierra Pacific Industries. I am sharing my time here today with my co-counsel, Rick Linker, and I knew we could have five minutes total, a lot of it. And Mr. Linker, on behalf of the landowners, is going to speak for five minutes, and I would also like to reserve four or five minutes for a lot of time. This appeal is presently postured and addresses the handling of allegations from the court in the district court below, in the context of a procedural posture that was set up by the district court and then ignored by the government prosecutors. Indeed, the allegations that are set forth in a remotion of the Trout Valley Court, if true, would mark an unbelievable assault on this court's integrity, if true. Indeed, those same allegations, which were generated in a joint investigation, joint prosecution involving the same defendants in state court with respect to the same fire, resulted in what was a fair hearing from all parties where everyone had a chance to be and findings by a superior court judge, which concluded that this entire matter was egregious, corrupt, and tainted, and resulted in the position of more than $32 million in sanctions. There's numerous aspects of the district court's decision denying a remotion for fraud on the court that are deserving of this court's attention. Because of my limited time, I'd like to focus on two. One would be, again, the procedural posture of the case and the way in which the court denied a review of these allegations, notwithstanding an order that assumed that these facts would be taken as true in the context of that proceeding. And two, I would like to talk about the way in which the court internally, with respect to its order, misapplied the law as it pertains to settlement or the impact of the settlement, be it on its ability to review these allegations to see if, in fact, the court was defrauded with respect to what took place in this case. The court's order was issued in November of 2014. It occurred a number of months after the Superior Court's decision in the state case. The court's order specifically said that as agreed at the conference before evaluating the merits of Sierra Pacific's accusations, we are to go through a three-step process to review the law and to review the allegations, quote, assuming the truth of Sierra Pacific's allegations. The court didn't change that order. The order was ignored by the government with respect to its own submissions. In fact, the government's opposition to the motion for fraud on the court submitted 3,300 pages of documentation. It relied on excerpts of depositions to the tune of more than 150 that were submitted by this opposition. In the context of reviewing our motion for fraud on the court, the district court actually assessed the facts and made decisions about the facts, notwithstanding the fact that we, in each instance, both in the motion as filed and in our reply to the government's opposition, urged the court to give us a chance to contravene those facts to the extent that it wanted to depart from the order that it issued and that we complied with it. I'm going to make an assessment. First of all, it's a serious burden of remedy. We saw it in the court denying, and now are appealing the denial of the settlement. Correct. I mean, based on this fraud to the court, I guess I'm starting to figure out why we can consider the instances of the alleged fraud that took place before the settlement. At this time, I mean, for the law, what's your best authority for that? The Supreme Court's decision, these amendments, specifically instructs district courts to look at the totality of the fraud, and your other reasons for that is because it's not a question of what the parties did between each other. It's never a question of that in the context of fraud upon the court. The court is not in privity with whatever is worked out between the parties. The court is protecting its own integrity with respect to any assessment of fraud to the court, and Hazel Atlas and Humphrey both teach that in reviewing whether or not the court was defiled, the court is to look at the entire spectrum of fraud. That occurred in the Humphrey case. The court specifically, although it didn't deal with the settlement, the court specifically in that case talked about the discovery fraud that took place in the case with respect to K.W. Thompson's failure to produce a second video that he had made that demonstrated that the gun fired when dropped, and that was to be the fact that the safety was ruined. In the context of discovery, K.W. Thompson, his general counsel, his adjacent counsel, failed to produce evidence, or technically failed to produce evidence that showed that K.W. Thompson's defense theory of the case was false. In Ray Lavender, it seems like there's some pronouncements there regarding fraud. Does that mean there's no higher self-criticism? Yes, but in Ray Lavender, it is a case that deals with a one-off accusation with respect to fraud, and the spectrum of fraud is very, very minor, Your Honor. In this particular case, the spectrum of fraud began at the outset when the United States started the investigation of the fire engaged in fraud with respect to the most important document undergirding these allegations against more than 20 defendants. Finding that the white flag, stating that a white flag existed at one spot when the facts had been alleged indicated that it did not exist. But you had an opportunity to go forward and show that to a jury, and you decided not to. In all these things, I guess my point is you knew a certain number of these things, many that overlapped with the state court proceeding, and you ended up making a strategic decision to go forward and take your chances with the jury. The decision that my client made, Your Honor, was not so much a strategic decision. It was a decision that was opposed to my client's. It was a retrial ruling. It was a reissue of the judge that clear-cut our defense from the standpoint of us losing. Emotion and limity filed by the government, where the government said that BC would not be allowed to introduce any evidence of third-party causation. The district court's ruling, if I recall correctly, you didn't make, said you were allowed to show that there was, that the authorities didn't really pursue arson. You could bring that out. She was not going to let you say exactly who you thought had done it, if I read her ruling correctly, but that you could pursue the law of that, and that in addition, her ruling, even though it was limited, was subject to change at the time of the trial if you could show more. So she changed her mind on that. Your Honor, the court's decision undercut our ability to talk specifically about specific facts regarding Ryan Bauer, and the evidence that wasn't given to the court when she made the decision to disallow that particular defense was actually in the possession of the government and involved the manufacturing of a false bribe solicitation to divert attention from Ryan Bauer. From the inception of this case, the allegations are that Edwin Bauer and his son engaged in an effort to put out breadcrumbs to divert attention from Ryan Bauer. The government approaches the challenge and says, in the context of your careful balancing under 403, there is only a shred of evidence regarding anything relating to Ryan Bauer and no evidence whatsoever regarding arson being a detention cause. But what they knew, and what they didn't reveal to the court, was the fact that as they served a trial subpoena on Edwin Bauer, he specifically said that my law firm, Denny Brand, and or SPI communicated a false $2 million bribe to the attorney who at the time was representing the Bauers, so as to buy the silence of Ryan Bauer. The court had a right to know that. We certainly had a right to know that. And the rule, 26 specifically, imposed upon the government an obligation to not only act with candor towards the court, but also an obligation to produce that discovery before trial. You're talking about the difficult language in the settlement agreement, which suggests that there will be no inquiry. Basically, you can't go back on it, no matter what you find. It's language that's found in every settlement agreement. It's not enforced, but that's not abroad. It is language that is found, typically, in settlement agreements. It is the case that with Hazel Atlas, there was a settlement agreement. It is the case that with respect to the court's decision in Beverly, there was a settlement agreement. In each of those cases, the court didn't look at what the contract was between the parties, because that's irrelevant to the fundamental purpose of fraud upon the court, which is to assess whether or not the court has been defrauding. In this particular circuit's definition of fraud upon the court, it's really twofold. It is, one, it embraces a species of fraud, which does or attempts to defraud the court itself, or two, it is a fraud perpetrated by officers of the court so that the judicial assembly cannot perform in a useful manner. It's impartial, passed, and the adjudicating case is presented for adjudication. The evidence that we did not have when we entered into that settlement went directly to the second prong, and in many ways, perhaps, the more important prong here, because not only are we dealing with lawyers that were holding back evidence from the court and specifically represented to the court, there wasn't a thread of evidence that she engaged in a critical 403 analysis. But thereafter, we also found evidence that they engaged in conduct that relates to the investigators to give them comfort or courage with respect to what they perceived and told the investigators was not an issue or a fundamental aspect of their investigation. I see that I'm running up against my time. I want to make sure I leave enough time for Mr. Laker to answer all of your questions. I'll reserve four minutes for him. Thank you. Good morning, and please support. My name is Greg Laker. I represent the Walker family landowners and their long-time forester, W.M. Bain. The Walker family, who was sued in this case, the members are 14 people who were sued under individual and underrepresented capacities trustees. They range in age from 81 at the time, the patriarch, Mark Walker, Jr., who was an infant at the time of the loss. In September of 2007, Labor Day, they had no way to possibly imagine that they would ever be sued for the volume of magazine damages that were claimed in this case. No one had ever seen that. As a result of the family, the land had passed down since the turn of the last century from their ancestor, T.B. Walker. They've been responsible stewards of the forest ever since. He never dreamt that they would face this exposure, so they owned the property essentially as good as it come. So what that meant is when they were faced with what turned into close to a billion dollars worth of damages, it wasn't just the property where the fire started that gave them unique exposure as landowners. There are plenty of cases you could have left them alone in the case. They never dreamt that that could be the case. So it wasn't just the land, it was everything these people owned on Earth or would ever own was on the chopping block. So a question that hangs over the case, why did you settle? Well, my response is, how on Earth did you not settle? How did you not face that kind of exposure? And that takes me to the first point I want to make. How did we get to $791,367,246.76? I will submit to you that those are made-up numbers. If you look at the statement, the 2006 statement, where the potential environmental damage is claimed to be $400 million, $69 million where you look at the once-heralded settlement, as the U.S. Attorney has talked about, the $118,500,000 settlement, if you do the math on any of that, it will become readily apparent that this case was charged and pursued for far beyond the pre-fire fair market value of the land. And the land's still there. It's burned before, it'll burn again. The government still owes it. And yet we have this incredible situation that gave my clients no choice. And I can assure your honors that trying to bond around a half-a-billion-dollar judgment by 14 individuals is an impossible prospect. So there was a gun to their head. And that gun led them to make the decisions that they made. I would submit that one aspect of this wide-ranging conduct that we're here to discuss is this false charge. It's like charging someone for burglary and then telling them, you know, we're going to charge you for the murder that would happen next door. That person is going to face a real challenge. It's what they do even if they're innocent of the burglary. That's what happened here. Now, a snapshot of what went on. I think it best be seen by the white flag meeting at the U.S. Attorney's Office. The history is the investigator, Josh White, was posed, denied the white flag. It was blown up on a computer screen. He had to see it and acknowledge it. So they hold a meeting with a lead U.S. prosecutor, a lead state prosecutor, all the investigators, and Dave Reynolds, who was the federal investigator. They hold the meeting to discuss this white flag. They blow it up in front of Mr. Reynolds. It's a seven-hour meeting. We don't know how much was in place for this white flag, but clearly it was discussed at length. They never thought they would find out about that because of the trite prosecution privilege, and they persisted. They only found out about it after extensive law enforcement activity. But he saw it at the meeting. They produced it for deposition a month or two later, and we get a white flag. I don't believe on a white flag. That is a snapshot of actions by government investigators, government attorneys. They never thought it would be discovered. It's a portrait of what they did when they thought no one was looking. I'm sorry, didn't you have this information at the time of the settlement? Yes. You were going to use it in trial, and a jury thing. You might have been just as outraged as you are. Yes, Your Honor. It's a $700 million bill. I understand that, and that's interesting, and it's difficult. But you said that the metal had been found in the mail, so the Senate aren't guilty on those judgments. They're trying to find backgrounds in the court. I would refer to Mr. Warren's comments about the purpose of foreign court. It's more than the administration of justice can withstand, according to the judge who looked at the evidence. Thank you, counsel. Thank you. Thank you, Your Honor. May it please the Court, I'm David Shalady, representing the United States. Briefly, before I address the legal and factual issues in the case, I want to clarify one thing. We've said the truth of almost all the accusations made by the defendants because the district court told us to do so. That does not mean that the Institute of U.S. Attorneys prepared our case for trial and committed any of the alleged misconduct. They did not. We did not engage in the sort of conduct that has been alleged in this case. Now, I want to address a couple of points that the Court has raised in the opening arguments of the defendants. Then I want to turn to a fundamental disagreement between the parties about the meaning of the unanimous Supreme Court decision in Begerle and the rules that it established in respect to the finality of judgments. And then finally, I want to turn to several decisions of this Court, Hager and Dixon, and explain how they can be reconciled with Begerle and the State of Stonehill and the position that we take in this case. Turning to the points that were raised already this morning, the motion in limine on arson defenses, I think perhaps the most important thing about the motion in limine is that the Court's record shows beyond dispute that the basis for the Court's position on that motion was the defendants' own statements about their intent, what they intended to do at trial. The Court did nothing in its ruling other than hold the defendants to their statements of intent. There's been an attempt in the reply brief to dispute what defense counsel said during the motion in limine hearing. We don't think that the reply brief is accurate on those points. But more important than our disagreement about that is that the Court's ruling and the basis for the Court's ruling is enough to make that claim non-actionable. The Court did nothing in its ruling on the motion in limine based on anything that we said or didn't say. The hearing transcript is clear. The Court's decision was based solely on defense counsel's own statements. And the Court also raised language in the settlement agreement. I think there are multiple important points there. This isn't boilerplate language, Your Honor. The language of the written agreement was negotiated over a period of two weeks after an oral settlement was reached. You're saying that when there's a fraud on the Court, you can never, and there's a waiver on an issue like this, there's a provision that says you can't come back in and accept a settlement, that when there's fraud on the Court, you can never try to undo the settlement? No, Your Honor. It's not a never proposition. A settlement, if part approval of settlement is obtained by fraud, that can be erased years later. But in order for there to be fraud on the Court, there has to be a fraud in the name of the Court. The Court's decision must have been influenced or must be a grave miscarriage of justice. And none of those requirements can be satisfied, whereas here the judgment is entered upon a settlement agreement at the joint request of all parties, the defendants themselves asking the Court to enter that judgment. Upon the end, the Court considered nothing but the settlement agreement itself. When it did so, there wasn't a hearing. There were no arguments or briefs filed. The Court made no findings of fact. It considered nothing but the parties' agreement. In those circumstances, fundamental principles of fraud on the Court simply cannot be satisfied, especially where, as here, the language of the settlement agreement includes an express release of all claims, known and unknown, and acknowledgment that there may be material unknown facts, which the agreement says the parties all acknowledge. And finally, in response to the argument that's been made here, the settlement agreement also contains a clause in which all parties, including all of the defendants, represented to the Court that they entered the settlement voluntarily, without any duress or compulsion whatsoever, in order to avoid the uncertainties of trial. That's what happened here. That's what they told the Court. And that's part of the basis upon which the Court approved the settlement and dismissed our complaint with prejudice at the request of the defendants. Turning to our disagreement about Begerle,  that Begerle requires great discourage of justice, the defendants say in the reply brief that in Begerle, the Supreme Court said, and just to be perfectly fair, I want to quote it, if there had been an intentional concealment or fabrication, its ruling would likely have been different. There's no statement from what they said there of that in Begerle opinion. The defendants also assert in their reply that the Court never even hinted that the fraud allegations were not actionable because they had no impact on the underlying judgment. In fact, Your Honors, the Court went far beyond hinting. The Court explicitly recognized in that earlier requirement that the outcome of the underlying action would have been different if not for the deception. Well, after those substantial findings made in the State Court order that was issued, what are we to make of all of that? I mean, it seems like one court was persuaded that there was activity in conduct that required that that case be dismissed. Your Honor, I don't think you can properly make anything of it. Not only is the State Court order non-final under presumption rules, and so it determines no facts in this case. It is essentially hearsay. But in addition, as the District Court explained, the standards that were applicable in the State Court Act were different from the standards that were applicable here. And finally, the U.S. State Court made one finding pertaining to action by anyone in federal government, and that finding was clearly incorrect. The Court found in a footnote in this order that Reynolds, in a meeting in our office, acknowledged that he could see a white flag in a photograph and then denied that he could do so during his federal deposition. That's incorrect. In his federal deposition, on a page of the transcript textilized by the defendants, Reynolds acknowledged that when the photograph was displayed in high resolution on a computer, he was able to see what looked like a white flag. Beyond that, Your Honor, in a subsequent day of his federal deposition, on November 15th, 2011, seven months before the settlement, White acknowledged 11 times that during the meeting in our office, he was able to discern the white flag in a photograph when it was displayed in high resolution, only when it was displayed in high resolution, which is exactly what happened on the first day of his deposition. So Reynolds didn't hide what occurred in our office. He didn't deny what he was able to see in our office. And he didn't deny that he was able to see a white flag in a photograph when it was displayed in the same way that he said he was able to see a white flag in our office. Mr. White, in here, it's been argued that he had a contingent financial interest in the outcome of the fire investigation. It looks like the state court sort of went along with that finding. And that he made a benefit from the increased funding to the white photograph accounts, if I'm saying that correctly. What's your response to all of that? Well, I'm sorry, I think I interrupted you twice, Your Honor. The first one is that White is not a federal employee. He never was. He is a state investigator. And then the second point, the reply brief... Would it be okay if he was a state investigator if he had an interest in the outcome? I don't understand. Well, he had no interest in the outcome of the federal case, Your Honor. He had no interest in that. And in addition, the facts... Just to clarify what the facts are with respect to White and with this post-contingent interest. The facts get a little bit confused in the reply brief because the reply brief has a heading that says the lead investigator had an obscure contingent interest in them. And the brief goes on for four pages. Or at least three. Almost all of which are about someone who was not an investigator on the case. With respect to White, the defendants have not alleged that White received any money from the state fund. They alleged only that White benefited from the state fund in the form of fire investigator training and equipment, like the wonderful high-resolution camera which tabled the defendants to find the White flag in photographs that we gave them early in discovery. So I don't think... First, I don't think that White's... Whatever contingent interest, White might have had could be attributed to the United States. And in addition, I don't think he had any kind of a contingent interest. The defendants have not even claimed that he did have any sort of trouble to this court. It's been suggested that we should adopt a rule that civil government attorneys are subject to a higher standard of professional responsibility than private attorneys. What's your position on that? Well, I think it's partly precedent, Your Honor. The stringent standards were thought of in the court adopted by this court and by the Supreme Court. Most of them were adopted in cases involving allegations against government counsel, against counsel for the United States, that includes Beckerley, the state of Stonehill. Well, it seems that the D.C. Circuit has apparently adopted this principle, the ABA model, code of professional responsibility, and it also appears to have adopted this principle. Well, a distinction must be drawn between what are the ethical obligations of counsel of various types and what constitutes fraud on the court. Those are two different questions. Sometimes I think this court... It's hard to imagine that this court would rule that fraud on the court can be shown in a case involving government counsel under standards less than the ones recognized by this court and the Supreme Court in cases involving government counsel. I think that issue's been decided. I want to return now to Beckerley, if I may. And I was just saying that the court recognized that when relief from judgment is requested more than a year after entry of the judgment, it is necessary to show that the outcome of the underlying action would have been different if not for conception. This is the court's statement. After noting that all that was at issue in Beckerley was a failure to conduct a diligent search of government records and make a complete disclosure to the court, the next thing the court said was, "...we therefore need not address the additional requirement that evidence of the Boudreau grant would have changed the outcome of the original action." That's her footnote 4, and it's the same thing that the Beckerley opinion says in text. May the... May the judgment in Marshall misscarriage of justice. This is what the court said about Marshall as an example of what is required. Quote, "...suggestions in question would not have been rendered against Mrs. Marshall but for the use of evidence of the letter alleged to be forged." This is essentially the same as what this court said when speaking to Spelman, where it recognized that an agent committed perjury. And in words, the court concocted a story and yet found that that was not a fraud on the court, even in combination with other errors, because it, quote, "...likely did not affect the outcome of the case." The alleged fraud here could not have affected the outcome of the case. As in the 8th Settlement Bar case, this is cited in our brief, excluding those from the 2nd, 5th, and 8th circuits. The court entered a judgment jointly proposed by the parties as part of their settlement and had considered nothing but the settlement agreement when doing so. This is not a grave miscarriage of justice. The district court can be affirmed through the sound reasons given in this order. In addition, under Begerle, the settlement should require all relief, regardless of what the defendants do. The defendants argue that Begerle rejected this rule. It did not. The court did not bring certiorari in Begerle on the effect of the settlement agreement. It was not argued in the briefs. It was not raised in the oral argument. And it is not mentioned in the opinion. Now, Begerle's requirements are stringent because that is necessary to protect the integrity of final judgments. But these stringent rules do not spread courts of all ability to protect the integrity of their proceedings. Other rules, other remedies, are available to the court to address professional misconduct. And so, in the recent Hager case, the court imposed monetary sanctions without discerning the judgment. This court and the Supreme Court both emphasized that fact. Because the judgment was left in place, Begerle's requirements did not apply. There was no need to find a grave miscarriage of justice, nor was there any need to find the outcome would have been different. This court's Dixon decision arose from a request by the government, the prevailing party, to vacate a decision in its favor three months after that decision was entered. So, once again, Begerle was entirely inapplicable. Begerle applies only a year after judgment is entered. Because Begerle did not apply, there was no need in Dixon for this court to consider whether there was a grave miscarriage of justice, nor was there any requirement to show that the outcome would have been different, if not for deception. Unlike Hager and Dixon, the defendants here seek to upset a final judgment more than two years after it was entered. Therefore, Begerle applies, a grave miscarriage of justice must be shown, and the outcome must be shown to have been different, if not for deception. None of these requirements is satisfied. I want to address one more point made in reply brief before closing. The reply brief denies that the defendant told the court they would prove fraud. In just two filings that are in supplementary excerpts, they use the word fraud seven times to describe what they would prove. Those uses are at page 290 of the supplemental excerpts, twice on page 527, again on page 528, 531, and twice again at page 532. Here's just one of them. The defendants will show that USFS and Cal Fire investigators not only failed to conduct a scientific and systematic investigation, they actually engaged in a fraud designed to frame the defendants. That's in the supplementary excerpts at page 532. It was the same fraud that the alleged supported their motion now. This is what they said in the joint pre-trial statement. Quote, Defendants' equitable defenses are based on government investigators' intentional failure to properly investigate the fire, cover-up of relevant evidence, manufacturing of evidence, and intentionally untruthful deposition of testimony and sworn interrogatory responses about the same. That's in the supplementary excerpts at page 313. As the district court recognized, a party cannot forego an opportunity to prove fraud claims before judgment and seek relief from that judgment based on the same claims years later. In closing, Your Honor, there is no miscarriage of justice here. The defendants asked the court to enter judgment on the settlement. The court did so based on the settlement agreement and nothing else. When it entered judgment, the court was well aware that the defendants claimed their case was a fraud. It had considered these accusations on at least 18 motions before the settlement. The court knew the issues were still disputed.  The agreement also told the court that defendants voluntarily chose to settle without any duress or compulsion. In addition, apart from the settlement, as the district court found, the defendants have failed to identify even a single instance of fraud on the court, certainly none on the part of any attorney for the government. If the court has no further questions, I'll simply ask that you defer. Thank you. Thank you. I'm going to give you four minutes for a moment. You have a trial, so you can go on to pay it. Thank you, Your Honor. As someone should say in response to what was just said to this court by the government's counsel, most of which pertains to the fact that he just argued the facts with you. He disagrees with our allegations he brought into play in this court as well, various facts that he finds in the record that we were never allowed to controvert, and we can't controvert those facts. He is arguing through a paper trial once again evidence that he put in the record that is directly contrary to what this court set out to do in the context of the procedural framework that was imposed upon all the parties, but only one side complied with. In the context of our reply brief, we specifically said, to the extent you are going to assess the facts as just stated by the government in their paper trial, please give us a chance to respond. This is not just an argument. This is reversible error. The cases that we said in our brief are clear. The court's language is clear. This is a question of one of the most grotesque efforts to defraud the court that has ever been seen in California's history, as confirmed by a state court judge who issued $32 million plus in sanctions after spending four months going through 30,000 documents, looking at videos, looking at deposition transcripts, and all we've ever wanted is the same opportunity here. We've never been given an opportunity in violation of Lee v. City of Los Angeles, Ehrlich v. Glasgow Global Network Commissions. All of that is in our brief. This is what the court said in this order. As agreed at the conference before evaluating the merits of Sierra Pacific's accusations, the court will resolve the threshold issues of whether the alleged conduct ingrides the Sierra Pacific's Rule 63 cushion constancies from the court. We will assume the truth of Sierra Pacific's allegations. Now, the government's lawyers stood up here today and started by saying we accept that it's true, their allegations. That is not true. They submitted 3,300 pages of documentation to contravene our allegations, arguing those facts in the context of their own decision. And this court looked at those facts and specifically attempted to reach a conclusion that Mr. White's failure to see a photograph, a white flag in a photograph, was similar to what he saw from the bench when he looked at the same photograph. That is an absolute miscarriage of justice. It's completely contrary to the facts with which you are hearing. It's completely contrary to the law. It is reversible error and it's a violation of due process for the court to obtain that. He also betrayed where he was with this case in the context of the tweet that he sent out three hours after the issuance of his order defaming my client by stating that it was still liable for the limelight fire damages. Another aspect of his decision making that it warrants reversal here. But let me talk, since it was done just now, about some of the facts. The government's lawyers have said that Mr. White, in his conduct, shouldn't be assessed here. He should be assessed here and frankly not here because we never had a chance to contravene all of the arguments that were made in the facts. He didn't. I'm sorry. You see, you never had an opportunity prior to settlement. You had an opportunity to resolve a lot of things. You could have gone on to trial. You would have resolved the facts. A substantial number of them were later also included in these eight court determinations. So, when you say you never had an opportunity and it was determined that it was not going to work out, that is true? Your Honor, the court's order after the 403 determination with respect to the facts was the byproduct of misrepresentations to the court and our decision making at that point in time with respect to this need to settle was also the byproduct of various omissions that were made by the government in its failure to act with any sort of candor whatsoever with respect to what it knew that we didn't enjoy at that point in time. So, our algorithm that my client went through with respect to this was affected by officers of the court who were affecting the way in which the use of machinery was supposed to perform its impartial task of educating cases. The district court was defrauded. This court has been defrauded. The system of justice has been defrauded. And all we are asking for here is a hearing. There is nothing about Beverly that says that we're not entitled to one. And every single circuit opinion with respect to the way in which the procedural process unfolded regarding our allegations was violated here. So, if you look at the 100 plus pages of allegations that we've alleged with respect to what actually took place in the context of the investigation and the prosecution of this matter, it is so far above Beverly, so far above Beverly, so far above even Hazel Atlas, that it actually boggles the mind. It almost requires a suspension of disbelief that government prosecutors who the APA says are held to a higher standard by the way would engage in such conduct when we've never been given a hearing and when we have been given a hearing in front of a judge. The results speak for themselves. There was a protest in front of the court here. It was compounded by the fact that the district court judge here added to that lack of due process unfairness by setting up a process that we abided by and engaged in decision making on the facts in contravention of plain circuit authority that claims, holds, excuse me, that that is reversible error. An additional authority that says it's a violation of due process to do so. We would like a hearing, we would like that hearing to be had in front of the judge outside of the Eastern District. We would like to do that because we will reach the same conclusion that Judge Nichols reached in the same case, the same jointly prosecuted, jointly investigated case and we therefore continue to appreciate very much your time. Thank you, counsel. The case is targeted as a court decision. We will be in recess. Thank you.
judges: Thomas, Murguia, McCalla